## J. E. PRESCOTT *vs.* ALONZO STARKEY, et al.

May Term, 1898.

Present: ROSS, C. J., ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed October 3, 1898.

*Replevin a Statutory Action.*—The right to maintain replevin for goods did not exist at common law, but is conferred by statute, and must therefore be exercised under the restrictions which the statute has imposed.

*Exempt Goods—Not to be Replevied by Officer.*—V. S. 1470, which provides that when goods of the value of more than $20 are attached on mesne process and are claimed by "a person other than the defendant in the suit," such person may cause them to be replevied, does not permit attached goods to be replevied by the defendant, even though by statute they be exempt from attachment.

REPLEVIN. Plea, the general issue. Trial by jury, at the March term, 1898, Windham county, *Taft,* J., presiding. Verdict and judgment for the defendants. The plaintiff excepted.

*Waterman, Martin & Hitt* for the plaintiff.

*Clarke C. Fitts* and *Haskins & Schwenk* for the defendants.

TYLER, J. It appeared on the trial in the court below that the defendants Crosby & Adams were proprietors of the Brooks House in Brattleboro, at which the plaintiff, who is an oculist and optician, was a guest; that the defendants brought a suit against the plaintiff upon a claim that was not for the purchase price of the property replevied, and that the defendant Starkey, as a deputy sheriff, served the writ by attaching a trunk containing the personal wearing apparel of the plaintiff and his wife and a certain hand instrument that was used by him in his business in testing eyesight and fitting his patrons with eye-glasses, all of which property he claimed, and his evidence tended to show, was exempt from attachment. Demand was made for a return of the property upon the ground that it was exempt from attachment, and upon the defendant's refusal to return it this action of replevin was brought. The testimony which is referred to does not change the case stated in the exceptions. Upon the evidence of the plaintiff the court held, *pro forma,* that the action could not be maintained, directed a verdict for the defendants, and entered judgment thereon, and the case comes here upon the exceptions.

The case must be disposed of in this court upon the ground that the property was exempt from attachment, and in accordance with the provisions of V. S. 1470, which reads: "When goods of the value of more than twenty dollars are unlawfully taken or unlawfully detained from the owner or person entitled to the possession thereof, or

when goods or chattels of such value, which are attached on mesne process or taken in execution, are claimed by a person other than the defendant in the suit, or debtor in the execution, such owner or other person may cause them to be replevied."

The right to maintain replevin for goods did not exist at common law but is conferred by statute; therefore it must be exercised under the restrictions which the statute imposes. The words, "other than the defendant in the suit, or debtor in the execution," employed in V. S. 1470, seem to exclude the plaintiff in this suit from the use of this form of action. *Collamer*, J., said in *Dow* v. *Smith*, 7 Vt. 469, "For taking property exempt from execution, *trespass* has ever been the form of action in this State." See *Eddy* v. *Davis*, 35 Vt. 247; *Sprague* v. *Clark*, 41 Vt. 6.

Even if the right existed at common law, as is insisted by some of the authorities, that right is restricted by the words above quoted.

The legislatures in several of the states have passed acts enabling the debtor to replevy exempt property when taken upon mesne process or execution, and in this State it may be *casus omissus*\* for it is reasonable that the debtor should be permitted to replevy household furniture, or provisions necessary for upholding life, or tools necessary to carry on his trade, when seized by his creditors; but it is the duty of the court to construe the statute as we find it, and for the legislature to amend the statute if considered unjust.

*Judgment affirmed.*

TYLER, J., with whom concurs THOMPSON, J., dissenting. I am not able to agree with the majority of the court in the disposition of this case. I concede, however, that, if the latter part of § 1470 relates to exempt property, the debtor

---

\*The omission, if one there was, is supplied by Acts 1898, No. 41, amending V. S. 1470.                                   REPORTER.

is excluded from the use of the action of replevin; but whether it does relate to such property or not is a fair question for discussion. The precise question has never before been considered by the court. In *Sullivan* v. *Davis*, 50 Vt. 648, and in *Steele* v. *Lyford*, 59 Vt. 230, the action was replevin against officers for exempt property that had been taken by them on mesne process, as in this case; but both cases turned upon the question whether the property, in the circumstances, was exempt: no suggestion was made by counsel for the defendant in either case that replevin would not lie, and the court did not consider the question. In the former case counsel for the plaintiff seems to have made the point in his brief that replevin was the proper action.

The reasoning of the court in *Briggs* v. *Gleason*, 29 Vt. 78, has some application here, though the property attached was not exempt. In that case replevin for a mare was brought by the defendant in the suit against the attaching officer upon the ground that the officer had put the mare into the hands of a third person who cruelly worked and treated her, though the defendant, who was the owner, had remonstrated with the officer against his putting the animal to such use. The county court held that replevin would not lie, though the act of the officer made him a trespasser *ab initio*. In discussing the question whether the process was any protection to the officer, this court remarked; "The whole proceedings under the process is justly regarded as mere finesse, and the shield of its protection is wholly withdrawn, and the officer stands a naked trespasser from the beginning, the same precisely as if he had never had any process;" and for that reason the court held that replevin would lie and reversed the judgment.

In the case above cited and in the one at bar the process was lawful. My point is that in the latter case the officer is without the protection of the law for taking property which the law has declared shall not be taken for debts, the same as in the former where the property was attachable but the officer put it to an unlawful use.

The authorities are somewhat in conflict in respect to the common-law rule upon this subject. It must be conceded that the fact that many of the states have enacted statutes like V. S. 1470, enabling the owner of property attached upon the debt of another person to replevy it, shows that the legislatures of those states have understood that chattels, when attached, were in the custody of the law, and could not be replevied by the owner, though a stranger to the suit.

*Parsons*, Ch. J., said in *Illsley* v. *Stubbs*, 5 Mass. 280, . . . "But chattels in the custody of the law cannot at common law be replevied—as goods taken by distress upon a conviction before a justice, or goods taken in execution—and by parity of reason, goods attached by an original writ, as security for the judgment, cannot be replevied; but if the goods are wrongfully taken by virtue of legal process, the remedy of the owner was by action of trespass or trover against the officer; for the common law would not grant process to take from an officer chattels, which he had taken by legal process already issued." It was so held in *Kellogg* v. *Churchill*, 2 N. H. 412, and in *Smith* v. *Huntington*, 3 N. H. 76. See notes to *Kellogg* v. *Churchill*, 9 Am. Dec. 104.

In the notes to *Dunham* v. *Wyckoff*, 20 Am. Dec. 695, Mr. Freeman quotes from an article in 12 Am. Jur. 106–108, where the writer contends that, as the action lies for a tortious taking of goods, replevin is the proper remedy at common law against an officer for chattels which he has attached or seized on execution, provided the plaintiff in replevin be not the debtor. The writer says: "An officer is not justified in seizing the goods of a stranger to the writ because they happen to be found in the possession of the defendant. In making such seizure he does not obey the mandate of his suit; he is a wrong-doer and a trespasser, and is entitled to no more consideration than if the goods had been taken from the possession of a stranger;" but

he concedes that the action of replevin ought not to be
extended to cases wherein the plaintiff was the defendant
in execution. In this concession Mr. Freeman does not
concur, and says: "It does not harmonize with the present
state of the law, and will very materially conflict with the
spirit and thwart the objects of the modern exemption
statutes. Certainly the defendant ought not to be
encouraged in any proceeding tending to impair the
legitimate effect of the judgment or of the writ under which
the officer is acting. But the sheriff, upon a demand for
exemption being made, has no more right to seize property
exempt from execution than to take the chattels of a
stranger to the writ." . . . "Upon principles of policy
certainly the debtor whose wearing apparel or furniture or
tools are intended by law to be exempt from seizure, ought
to have the right to recover them at once, if unlawfully
seized, instead of being turned over to an action of trespass
or case, or some other equally tedious and inefficient
common law remedy." Mr. Freeman further discusses this
subject in his notes to *Van Dresor* v. *King*, 75 Am. Dec. 643,
where after stating that there are authorities upon both
sides of the question, and citing several, he says: "The rule
of the common law, that property levied on under execution
is *in custodia legis*, and cannot therefore be replevied from
the possession of the levying officer, has been much modified
in many states by statutes and codes of procedure, which
permit this remedy to a stranger to the writ whose property
has been levied on, and in many states to the execution
defendant also whose exempt property has been taken.
And even in the absence of statutes of this kind, logic and
law would permit this remedy to the debtor." In his notes
to *Carpenter* v. *Innes*, 25 Am. St. 257, he says: "The
general rule may now be stated to be, that if an officer,
either by mistake or design, levies on goods not the
property of the defendant named in his writ of execution or
attachment, or if the property for any reason is not liable

to be taken on the writ, replevin will lie against him at the instance of the injured party, no matter from whose possession the goods were so taken. This rule is sustained by an unbroken line of authority in nearly every state of the Union, with the notable exception already mentioned," referring to *Kittredge* v. *Holt*, 55 N. H. 621. See notes to *Philips* v. *Harriss*, 19 Am. Dec. 166. 2 Greenl. Ev. § 560, says if the goods of a stranger to the process are taken he may replevy them from the sheriff. 3 Kent's Com. 484, note; 20 Am. & Eng. Ency. 1041 *et seq.*

The court in its opinion in *Clark* v. *Skinner*, 20 Johns. 465, used some apt illustrations of the results of a holding that only trespass would lie: "If I leave my watch to be repaired, or my horse to be shod, and it be taken on a *fi. fa.* against the watchmaker, or blacksmith, shall I not have replevin? If the owner put his goods on board a vessel to be transported, shall he not have this remedy, if they are taken on execution against the master of the vessel? It seems to me indispensable for the due protection of personal property. In many cases, it would be mockery to say to the owner, bring an action of trespass or trover against the man who has despoiled you. *Insolvency* would be both a *sword* and a *shield* for trespassers. Besides, there are many cases, where the *possession* of chattels is of more value to the owner than the estimated value in money."

In some of the states the statute provides that the debtor may replevy exempted property when attached; in some states it is held that he is entitled to the action without the enabling act, and in others that he is not. See notes to *Kellogg* v. *Churchill, Dunham* v. *Wyckoff*, and *Van Dresor* v. *King, supra.* The general rule at common law now seems to be that the owner of goods may replevy them from an officer when attached by a third person, and upon the ground that property taken wrongfully is not in the custody of the law. It would be absurd to hold that, if the goods of A are taken upon a writ against C, either

by accident or design, they are so in the custody of the law that the owner cannot recover them,—that he must submit to a sale and have such sum in damages as he may be able to prove in an action of trespass.

If a stranger to the suit may replevy goods wrongfully attached there is greater reason for holding that goods which the law has exempted from attachment may be replevied by the owner when taken upon a writ or execution against him. Property cannot be in the custody of the law when so taken, for the reason that the legislature has expressly exempted it from attachment.

*Gilman* v. *Williams*, 7 Wis. 329: 76 Am. Dec. 219, was an action of replevin for exempted property, and it was held that "property is in the custody of the law when it has been taken and is held by legal process in a lawful manner and for a lawful purpose." The court said with reference to the goods attached, "but how could they be in the custody of the law unless the deputy marshal had a lawful right to take them into custody. The idea that an unlawful custody of property can be the custody of the law is simply absurd. . . . When property is lawfully taken by virtue of legal process, it is in the custody of the law and not otherwise; . . . there is no such thing as illegal custody."

The only just rule is that property wrongfully taken by an officer is not in the custody of the law—is not under attachment. It is true that it is sometimes questionable whether the debtor is entitled by his occupation to the exemption of certain property, as for instance, a team, and whether property is, from its nature exempt, but when it appears at the trial of the replevin suit, as in this case, that the property was in fact exempt, it would seem sufficient for the plaintiff to maintain his action.

By the laws of 1797, "one cow and such suitable apparel, bedding, tools, arms, and articles of household furniture as may be necessary for upholding life," were exempt from

attachment and execution.   The same exemption was made
in Slade's Statutes in 1824.   Many additions were made by
the legislature to the list of exemptions prior to and in the
revision of 1839, wherein the provisions now contained in
V. S. 1470 first appeared in our laws.   R. S. ch. 30, § 14.
It seems improbable that when by § 13, ch. 42, the
legislature exempted from attachment certain articles as
"necessary for upholding life," in another chapter it
intended to preclude the debtor from the right to replevy
them when attached.   Such a construction of the statute
would often be oppressive to the debtor and defeat the
purpose of the exemption laws.   It was consolingly said in
an early case that the debtor might purchase his property
at the sheriff's sale; but in the meantime he might be
deprived of necessary clothing or furniture or provisions, or
tools to carry on his trade, or valued heirlooms, and at the
sale be obliged to pay an extortionate price or lose them, or
he might not have means to purchase them at any price.

Replevin under V. S. 1465 is not an independent action,
but is a mere appendage to the original suit.   It is a
proceeding for the compulsory receipt of property attached,
and the condition of the bond is that it shall be returned to
respond to the final judgment if one is recovered by the
plaintiff in the action.   *Green* v. *Holden*, 35 Vt, 314;
*Driscoll* v. *Place*, 44 Vt. 252.   Replevin under § 1470 is an
adversary suit.   The section is broad in its scope.   It gives
every owner and every one entitled to the possession of
goods of the value of more than twenty dollars the right to
replevy them when unlawfully taken or unlawfully detained,
which is a right existing at common law;   also any person
who claims goods, except the defendant in the suit or the
debtor in the execution may replevy them when attached on
mesne process or taken in execution.   I admit that the
exception excludes the plaintiff from maintaining this action
if the exempt property taken was under attachment when
replevied, but I think it was not.   V. S. 1805 exempted it

from attachment, and I think that § 1470 did not intend to include and has no reference to that class of property which, by a long series of enactments finally embodied in § 1805, the legislature has set apart for the debtor as not liable for his debts other than those contracted in the purchase of the exempted articles.

A case might arise where the debtor, being in possession of personal property attached upon a writ issued against him, as of stock upon a farm or goods in a store, claims that he is an agent or bailee and not the owner; then §1470 would preclude him from this action to regain possession, and give it only to the alleged owner, but that is not the present case.

It was an unreasoning adherence to the doctrine of *custodia legis* that led to the earlier decisions that property could not be replevied when taken by an officer upon a writ, though exempt by law or belonging to a stranger to the suit. Quoting the language of the court in *Gilman* v. *Williams, supra*: "The exemption laws are remedial and beneficent acts of legislation, and we are disposed to give them a liberal interpretation, and to administer them in the benign spirit in which they are enacted."